UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
-------------------------------------------------------
WILLIAM TOOMEY and MARY
TOOMEY,

                  Plaintiffs,                            **MEMORANDUM AND ORDER**

     -against-                                    12-CV-3295 (DRH)(AKT)

MILLERCOORS LLC,

                  Defendant.
------------------------------------------------------X

**A P P E A R A N C E S :**

**For the Plaintiffs:**
**DELL & DEAN**
1325 Franklin Avenue, Suite 100
Garden City, NY 11530
By:   Christopher Dean, Esq.
       Joseph G. Dell, Esq.

**DELL, LITTLE, TROVATO, AND VECERE LLP**
5 Orville Drive, Suite 100
Bohemia, NY 11716
By:   Melanie Lynne Little, Esq.
       Joseph Nicola Cotilletta, Esq.

**For the Defendant:**
**RIVKIN RADLER LLP**
926 RXR Plaza
Uniondale, NY 11556
By:   Jason M. Romeo, Esq.

**QUARLES & BRADY LLP**
411 E. Wisconsin Ave.
Milwaukee, WI 53202
By:   Patrick Nolan, Esq.

**HURLEY, Senior District Judge:**

       William Toomey ("Toomey") and Mary Toomey ("plaintiffs") commenced this action

1

against MillerCoors LLC ("MillerCoors") ("defendant") asserting products liability claims arising from an incident that occurred when a Coors Light beer bottle exploded in Toomey's hand. Presently before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") seeking dismissal of the Complaint and defendant's motion to preclude the testimony of plaintiffs' expert pursuant to Federal Rule of Evidence 702 ("Rule 702"). Should the Court not grant those motions, defendant requests in the alternative that the Court grant its motion to enforce a settlement that it argues has already been reached in this action. For the reasons set forth below, the defendant's motions for summary judgment and to preclude the expert testimony are granted, and the motion to enforce settlement is denied as moot.

## BACKGROUND

The following facts, drawn from the defendant's Local Rule 56.1 statement[1] and the parties' submissions, are undisputed unless otherwise noted.

On May 23, 2009, Toomey, working as a bartender, was stocking an ice bin with 12

---

[1] Local Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). Additionally, the rule requires a party opposing a motion for summary judgment to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b). Although defendant, the moving party, has submitted the required statement, plaintiffs, the non-moving party, have not submitted a responding statement in compliance with this rule. While the Court could deem each of defendant's factual statements admitted based upon plaintiffs' failure to comply with Local Rule 56.1(b), *see* Local Rule 56.1(c), the Court will, in the exercise of its discretion, consider not only the facts set forth in defendant's Local Rule 56.1 Statement, but also the other facts contained in the record. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

ounce bottles of Coors Light beer. Toomey grabbed two bottles of beer with his left hand by holding one bottle between his index finger and his thumb and another bottle between his index finger and his middle finger. As Toomey placed the bottles in the ice bin, the bottle between his index finger and thumb exploded causing severe injuries to his index finger.

*The Pecoraro Report*

To demonstrate that the accident was the fault of MillerCoors, plaintiffs rely heavily on the expert testimony of George Pecoraro, the owner of Pecoraro Consulting, a litigation consulting business he started in 2005/2006. Prior to that, Pecoraro worked at PPG Industries, a company in the business of manufacturing automotive, residential, and commercial panel glass. Pecoraro's experience at PPG related mainly to refractories, *i.e.*, the materials that are used to manufacture furnaces in which glass is cooked. Pecoraro admits that he has never "worked in the manufacture of glass containers including bottles" or "consulted for a company that designed glass containers or manufactured glass containers." (Pecoraro Dep. at 109-110, 119-120.) Moreover, Pecoraro has not published any peer-reviewed articles on glass bottle design and manufacture, and he does not have any patents relating to glass bottle design.

Pecoraro opines that the accident occurred because the glass constituting the Coors Light bottle was not thick enough to withstand fracture. His report suggests that generally during glass bottle formation, tiny cracks form in the bottles, and if the glass is not thick enough, these cracks can lengthen during the rest of the bottling process and eventually fracture in the hands of a consumer. In order to support his theory, Pecoraro measured the "glass wall thickness" of six bottles of other beer brands, including Sam Adams Light and Bud Light, against that of three bottles of Coors Light. (Pecoraro Report at 5.) According to Pecoraro, the Coors Light bottles had an average thickness of .069 inches at the height of the

3

labels on the bottles, while the other brands of beer had an average thickness of .091 inches. He claims that the Coors Light bottle's measured thickness indicates that the bottle was susceptible to fracture.

Moreover, Pecoraro suggests that MillerCoors could have prevented Toomey's injury by putting a warning on the packaging "that some of the beer bottles in the case may have been damaged during processing and shipping and that they may fracture during handling." (*Id*. at 7.) In addition, Pecoraro suggests that in order to avoid injury, MillerCoors could use thicker bottles, require the bottling plant to more thoroughly examine bottles for defects, or use metal containers or bottles spray coated with a thin layer of plastic. Pecoraro points out, however, that all of these options add cost to the product.

Defendant takes issue with the methodology that Pecoraro employed for various reasons. First, as defendant points out, the table that Pecoraro created to report his findings on the glass thickness of the various bottles does not contain any findings regarding the Bud Light bottle. Defendant argues that by excluding the Bud Light measurements, Pecoraro "selectively relied on data to support his opinions, intentionally omitting the Bud Light bottle measurements from his final report and analysis" because they demonstrated that the Bud Light bottle was similar in thickness to the Coors Light bottle. (Def.'s R. 56.1 Stmt. ¶¶ 24-25.) Indeed, Pecoraro admitted at his deposition that he excluded the Bud Light bottle "[b]ecause it was too similar to the MillerCoors bottle in terms of its composition and design," i.e., thickness. (Pecoraro Dep. at 190-91.) In addition, defendant questions the reliability of the method that Pecoraro used to measure the glass. As defendant points out, "Pecoraro used a hammer to break bottles and measured whatever pieces of glass stuck to the bottle label. Thus, for some bottles he measured three pieces of glass that stuck to the bottle label, and for other

bottles he took four or five measurements." (Def.'s R.' 56.1 Stmt. ¶ 26.) Moreover, he "did not account for differences in label placement on any of the bottles he broke and, therefore, does not know if the pieces of glass he measured and compared to one another came from the same location on any particular bottle." (*Id*. ¶ 28.) Furthermore, Pecoraro admits that "he has not done any testing, and he cannot point to any data, to support his opinion that thinner-walled bottles are more susceptible to fracture than thicker-walled bottles. (*Id*. ¶ 31.)

*DISCUSSION*

## I. *Applicable Law and Legal Standards*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d

1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not implausible." *Id*. at 211 (citing *Matsushita*, 475 U.S. at 587).

## II. *Whether Pecoraro's Testimony Should Be Excluded*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

> opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702. Rule 702 "embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of N. Y.*, 414 F.3d 381, 395 (2d Cir. 2005). However, the Supreme Court has made clear that a district court has a "gatekeeping" function under Rule 702 and must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 580 (1993). The Supreme Court subsequently "clarified that, whether a witness's area of expertise was technical, scientific, or more generally 'experienced-based,' Rule 702 required the district court to fulfill the 'gatekeeping' function of 'mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.' " *Nimely*, 414 F.3d at 396 (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)) (alteration in the original).

The Second Circuit has articulated three inquiries that a district court must undertake as part of its "gatekeeping" function under Rule 702: (1) whether the "witness is 'qualified as an expert' to testify as to a particular matter," (2) whether "the opinion is based upon reliable data and methodology," and (3) "whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.' " *Id.* at 397 (quoting Rule 702). Here, defendant challenges whether Mr. Pecoraro is qualified to testify as an expert in this case and also challenges the reliability of the method he used to support his opinion.

*Whether Mr. Pecoraro is Qualified*

Defendant argues that Pecoraro is not qualified to testify as an expert in this case because although he "may have worked in the glass industry, . . . the company he worked for did not design or manufacture glass containers or bottles, and his job only related to refractories – not glass design." (Def.'s Mem. in Supp. at 18.) Moreover, defendant argues that "Mr. Pecoraro has never designed or manufactured a glass bottle; never designed or worked with filling lines at a brewery; and never consulted for a brewer or a company that makes production lines." (*Id*.) Plaintiffs argue in response that Pecoraro should qualify as an expert just as he did in *Karnauskas v. Columbia Sussex Corp.*, 2012 WL 234377 (S.D.N.Y. Jan. 24, 2012). In that case, plaintiff was injured when a glass coffee carafe shattered causing severe injury to his hand. There, the court found that although Pecoraro's "experience with the glass coffee carafe at issue [was] limited, Pecoraro [had] sufficient experience in glass science and technology to qualify as an expert." *Id*. at *7. However, as defendant points out, the *Karnauskas* court ultimately precluded Pecoraro's testimony because his opinions were not based on reliable data and methodology. Similarly here, even if the Court were to determine that Pecoraro is qualified, Pecoraro's testimony would still be precluded because as explained below his opinions are not based on reliable data and methodology.

*Whether Mr. Pecoraro's Opinion Is Based Upon Reliable Data and Methodology*

In *Karnauskas*, "[t]he Supreme Court articulated four factors relevant to determining the reliability of an expert's reasoning or methodology: (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or

8

method has been generally accepted by the scientific community." *Id.* at *7 (citing *Daubert*, 509 U.S. at 593-94). Although these factors are not exclusive and are to be applied flexibly, as mentioned above, the court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 141, 152.

In applying these factors to this case, it is clear that Pecoraro's testimony is not based on reliable data and methodology. Plaintiffs have not provided to the Court any indication that the methodology that Pecoraro employed has been tested or subjected to peer review and publication, let alone generally accepted by the scientific community. In fact, when asked where his methodology came from, Mr. Pecoraro responded, "[m]y head." (Pecoraro Dep. at 194.) Moreover, defendant raises valid points as to the reliability of Pecoraro's method, such as Pecoraro's failure to identify the location of the glass that he measured, failure to take the same number of measurements from each bottle, and omission of the Bud Light bottle because it was too similar in thickness to the Coors Light bottle. (Def.'s Mem. in Supp. at 22.) In addition, as in *Karnauskas*, Pecoraro "did not attempt to reconstruct the accident" and "did not consider or rule out alternate causes of the accident." 2012 WL 234377, at *10. Moreover, "there is simply too great an analytical gap between [Pecoraro's] unreliable methodology and untested theories and the conclusions he reaches in his report." *Id.* (internal quotation marks and citations omitted).

Furthermore, Pecoraro's testimony is simply too speculative. As defendant points out, Pecoraro's "proposed speculative testimony that the bottle was damaged during the filling process or that it contained an unknown and unidentified defect is not based on any facts or evidence in the record and does not satisfy Rule 702." (Def.'s Mem. in Supp. at 20.)

9

Defendant analogizes Pecoraro's testimony here to his testimony in *Trabbold v. Mike's Hard Lemonade*, 2011 WL 2117605 (E. D. Pa. My 26, 2011), where Pecoraro testified that a bottle of Mike's Hard Lemonade fractured "because it was damaged prior to being delivered to" the liquor store from which plaintiff purchased it. *Id*. at * 3.  In that case, Pecoraro testified that the lip of the bottle and/or twist off bottle cap were defective in manufacture and/or design and that the damage to the lip of the bottle likely formed during the bottle forming or capping process.  The court noted, however, that the record did not contain any indication that Pecoraro's "speculation was based on any specific knowledge of [defendant's] manufacturing process or the formation of the bottle at issue" and that such speculative testimony was inadmissible pursuant to Rule 702.  *Id*. at *3 n. 4.   Similarly, here Pecoraro has not provided any basis for his belief that MillerCoors introduced a defect into the bottle other than the fact that Toomey was injured after coming into contact with the bottle.  Accordingly, the Court precludes Pecoraro's testimony.

Finally, the Court is not persuaded otherwise by plaintiffs' argument as follows:

> Mr. Pecoraro's expert report clearly shows the twenty-seven items he used to render his opinions in this matter.  Said materials [are] sufficient to satisfy 702(b).  To the extent this Court finds otherwise, the fact that Mr. Pecoraro was not deposed on the literature he used, that his literature was not submitted on motion by Defendant, is grounds for denying Defendant's motion for summary judgment.

(Pls.' Mem. in Opp'n at 8.)  As defendant points out, however, plaintiffs "never produce[d] these articles, despite independent obligations and MillerCoors['s] explicit requests to do so." (Def.'s Reply at 7.)  Moreover, plaintiffs' opposition papers do not provide any explanation as to the particular contents of these articles and Pecoraro's reliance on them that would support a finding that Pecoraro's methods were reliable.  Furthermore, to the extent defendant did

10

question Pecoraro about such articles at his deposition, Pecoraro could not recall the significance of certain articles, (Pecoraro Dep. at 73), and his answers called into question whether some of the sources he used were reputable and established within the scientific community, (Pecoraro Dep. at 74-75 (discussing one of Pecoraro's sources, a "website where people write in with their experiences with spontaneously exploding glass)).  Accordingly, defendant's motion to preclude the testimony of Mr. Pecoraro is granted.

Plaintiffs have not pointed to any other evidence or material issue of fact upon which a jury could find in favor of plaintiffs' on their products liability claim.  As a result, defendant's motion for summary judgment is granted.  Given that summary judgment has been granted in defendant's favor, the Court need not address defendant's alternative motion to enforce the settlement.

## *CONCLUSION*

For the foregoing reasons, defendant's motions to preclude the testimony of Mr. Pecoraro and for summary judgment are granted.  Additionally, defendant's motion to enforce settlement is denied as moot.

**SO ORDERED.**

Dated: Central Islip, New York
February 17, 2015

/s/
Denis R. Hurley
United States District Judge